## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

NIRIN WALLS,

               **Plaintiff,**

v.

DR. KHAN,
DR. BOOSE,
MS. CUNNINGHAM,
LT. HUNDLEY,
SGT. WILSON,
NURSE J. BROWN,
LATOYA HUGHES,
NURSE SIMPSON,
SUSAN COLE,
LT. YATES,
C/O WHITE,
LT. REID,
C/O STREETER,
WEXFORD HEALTH SOURCE INC., and
DR. REISTER,

               **Defendants.**

**Case No. 26-cv-00334-SPM**

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Nirin Walls, an inmate of the Illinois Department of Corrections (IDOC) currently housed at Menard Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act for the violations of his constitutional and statutory rights that occurred while he was housed at Lawrence Correctional Center. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief

Page 1 of 17

must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

In the Complaint, Plaintiff states that he was transferred from Pontiac Correctional Center (Pontiac) to Lawrence Correctional Center (Lawrence) on May 25, 2025, and following his transfer, he was denied medications and ADA accommodations that he had been previously provided while at Pontiac. (Doc. 1, p. 9, 12). Specifically, he was not given the following medicines for four days: Lisinopril and hydrochlorothiazide for high blood pressure; tramadol (Ultram) for pain; tamsulosin (Flomax) for prostate issues; Depakote for seizures; and Geodon, Zoloft, and Cogentin for schizophrenia. (*Id.* at p. 10, 12). Plaintiff claims that he was also deprived of the use of a wheelchair and cane and not issued a "shower permit," which allowed him to shower daily because he suffers from urine incontinence. (*Id.*).

Upon his arrival at Lawrence, Plaintiff states that Lieutenant Hundley and Lieutenant Yates pushed him in his wheelchair, with his cane on his lap, to a shower stall for a strip search. (Doc. 1, p. 9). Following the strip search, he asserts that Hundley, Yates, and Correctional Officer Streeter confiscated his wheelchair and cane and placed him in a "crisis cell strap down chair." Plaintiff asserts that he was then "wheeled" in the crisis cell strap down chair to cell 5CL22, where the officers threw him out of the chair and onto the ground. When Plaintiff was forcefully ejected from the chair, Plaintiff injured his back, left elbow, and neck. He recounts that he was unable to stand, and he was left lying on the ground for hours. During that time, Plaintiff states that he urinated and defecated on himself and had several seizures. (*Id.*). Hundley informed Plaintiff that he had been instructed by Nurse Simpson to take away Plaintiff's wheelchair and cane. (*Id.* at p. 10). Plaintiff asked to speak with a doctor because Nurse Simpson is not qualified to order the confiscation of his mobility aids. Hundley, Yates, and Streeter told Plaintiff that he would have to suffer until he was scheduled to see the doctor. (*Id.*).

On May 26 and 27, 2025, Plaintiff was taken to cell 5CL22 by Sergeant Wilson, Lieutenant Hundley, Correctional Officer White, and Lieutenant Reid, and he again was strapped down in a crisis chair. (Doc. 1, p. 14). White lifted Plaintiff from the chair and threw him onto the ground. White injured himself in the process, and Wilson, Reid, and Hundley told White to leave Plaintiff on the ground. (*Id.*).

From May 25, 2025, through June 5, 2025, Plaintiff's neighbor wrote several requests on Plaintiff's behalf to Dr. Cole and the healthcare unit administrator (HCUA), Cunningham, asking for his pain medication, a cane, and a wheelchair. (Doc. 1, p. 10). Plaintiff received his medications around May 29, 2025. Dr. Cole signed a medical permit for Plaintiff to have a wheelchair on June 2, 2025, but Plaintiff was not provided with a wheelchair until June 7, 2025. Without a wheelchair, he could not go to the dining room for meals, and he did not eat for days. (*Id.*).

Plaintiff claims that he "passed out" in his cell over six times and had several seizures during the four days he was not receiving his blood pressure and seizure medications. (Doc. 1, p. 13). He states that under the settlement agreement in the class action lawsuit *Lippert,* an inmate is to retain all medical permits and medications following a transfer to a new facility until the inmate is seen by the facility's doctor. (Doc. 1, p. 12). Additionally, Dr. Cole should have seen him urgently in accordance with IDOC protocol. (*Id.*).

At some point in June or July 2025, Plaintiff spoke with Dr. Khan and informed him that the Geodon medication, prescribed to treat schizophrenia, was hurting his stomach. (Doc. 1, p. 9, 10). The details of Plaintiff's conversations with Dr. Khan vary. First, Plaintiff asserts that Dr. Khan instructed him to take Geodon with a snack, but that Dr. Khan never placed an order for Plaintiff to receive a snack along with the Geodon medication. (*Id.* at p. 9). Next, Plaintiff alleges that he had previously received a snack with Geodon while he was at Pontiac, but that once he was transferred to Lawrence, Dr. Khan "refused" to order the snack and advised Plaintiff to stop taking

Page 3 of 17

Geodon if it was hurting his stomach. (*Id.* at p. 10). Finally, Plaintiff claims that Dr. Khan instructed him not to take the Geodon medication without a snack because the medication will damage his stomach. (*Id.* at p. 11, 13). Plaintiff claims that around March 16, 2026, Dr. Khan told him that he should be receiving a snack with the Geodon medication. (*Id.*). As of filing the Complaint on March 25, 2026, he is still not receiving a snack with Geodon, and Dr. Khan has not prescribed any alternative treatment. (*Id.*). Because he is not given a snack with Geodon, Plaintiff has not taken the medication since May 25, 2025, and his schizophrenia has worsened. (*Id.* at p. 11). He has been placed on crisis watch over seven times, had disciplinary issues, and attempted suicide. (*Id.*).

Plaintiff asserts that Dr. Boose refused to place him in mental health group therapy sessions from September 2023 through November 2024, when he was previously housed at Lawrence, and Dr. Khan has refused to put him in mental health group therapy sessions since his transfer back to Lawrence in May 2025. (Doc. 1, p. 11, 13). He states that Dr. Boose, Dr. Khan, Director Hughes, Dr. Reister, and Warden Brown "are liable for [] zero mental health care." (*Id.* at p. 11).

### DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

| | |
|---|---|
| **Count 1:** | Eighth Amendment claim against Hundley, Yates, and Streeter for the use of excessive force against Plaintiff on May 25, 2025. |
| **Count 2:** | Eighth Amendment claim against White for the use of excessive force against Plaintiff sometime around May 26 or 27, 2025. |
| **Count 3:** | Eighth Amendment claim against Hundley, Yates, and Streeter for subjecting Plaintiff to cruel and unusual punishment by leaving Plaintiff on the floor of his cell unassisted for hours on May 25, 2025. |
| **Count 4:** | Eighth Amendment claim against White, Wilson, Hundley, and Reid for subjecting Plaintiff to cruel and unusual punishment by leaving Plaintiff on the floor of his cell unassisted sometime around |

Page 4 of 17

May 26 or 27, 2026.

**Count 5:**   Eighth Amendment deliberate indifference claim against Simpson, Cole, Cunningham, Hundley, Yates, and Streeter for failing to provide Plaintiff access to a mobility device.

**Count 6:**   Eighth Amendment deliberate indifference claim against Khan, Boose, Hughes, Brown, Wexford, and Reister for failing to provide Plaintiff adequate mental health care.

**Count 7:**   Eighth Amendment claim against Defendants for deliberate indifference to Plaintiff's serious medical needs by failing to ensure Plaintiff received his needed medications and medical permits upon his transfer to Lawrence.

**Count 8:**   ADA/RA[1] claim for denying Plaintiff access to mobility assistance from May 25, 2025, through June 7, 2025.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Counts 1 and 2

Plaintiff's allegations that Hundley, Yates, and Streeter threw him onto the ground of his cell on May 25, 2025, for no reason causing injury to his back, elbow, and neck are sufficient for Count 1 to proceed against these Defendants for excessive force. *See Hudson v. McMillian,* 503 U.S. 1, 7 (1992) (force applied maliciously to cause harm, as opposed to an effort to maintain or restore discipline, constitutes excessive force in violation of the Eighth Amendment).

Likewise, Plaintiff has stated a claim against White for unnecessarily throwing him onto the ground of his cell sometime on May 26 or 27, 2025 (Doc. 1, p. 14). *See Reid v. Melvin,* 695 F.

---

[1] Plaintiff does not mention the Rehabilitation Act (RA), 29 U.S.C. § 794(a), in the Complaint, but the Seventh Circuit has cautioned that claims of discrimination on account of a disability, especially those from a pro se prisoner litigants, should be analyzed by the district court in light of both the ADA and RA, whether or not the plaintiff has asserted a claim under the latter statute. *See Norfleet v. Walker,* 684 F.3d 688, 690 (7th Cir. 2012).

[2] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

App'x 982, 983-84 (7th Cir. 2017) (when there is no justification for the use of force, even de minimis force may not be used).

**Counts 3 and 4**

The Eighth Amendment prohibition on cruel and unusual punishment forbids the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Generally, to establish an Eighth Amendment claim an inmate must plead facts showing an objectively serious condition, and a defendant's subjective disregard for a risk to the inmate's health or safety.

Plaintiff alleges that he suffers from several chronic illnesses, he has limited mobility, and he incurred further injury when he was forced from the crisis chair onto the cell floor on May 25, 2025. According to Plaintiff, Hundley, Yates, and Streeter left him on the floor of his cell for hours without assisting him onto a bed or into a wheelchair, and they assist him in obtaining medical care for his injuries or chronic illnesses. (Doc. 1, p. 9). As a result, Plaintiff urinated and defecated himself, passed out, and had seizures. Plaintiff was again left on the floor of his cell without mobility and medical assistance sometime around May 26 or 27, 2025, by White, Wilson, Hundley, and Reid. These facts state an Eighth Amendment claim against Defendants, and Counts 3 and 4 survive preliminary review.

**Count 5**

The Eighth Amendment prohibits the deliberate indifference to a prisoner's "serious medical needs," as deliberate indifference "constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (internal quotations omitted). As stated above, to successfully state an Eighth Amendment claim of deliberate indifference, a plaintiff must plead that the defendant knew of a serious risk of harm and consciously disregarded it. *See Giles v. Godinez*, 914 F.3d 1040, 1049

Page 6 of 17

(7th Cir. 2019).

Plaintiff claims that at the direction of Nurse Simpson, Plaintiff's wheelchair and cane were confiscated upon his arrival at Lawrence. (Doc. 1, p. 10). When Plaintiff asked Hundley, Streeter, and Yates to call a doctor about his need for a wheelchair, they responded, "You have to suffer till you see the doctor." (Doc. 1, p. 10). Plaintiff then submitted request slips to Cunningham and Dr. Cole requesting a wheelchair. A medical permit for him to receive a wheelchair was issued by Dr. Cole a week after his arrival on June 2, 2025, and he received a wheelchair on June 7, 2025. While awaiting his wheelchair, Plaintiff was unable to move about his cell and could not stand and walk to the dining room. Without a wheelchair, he missed several meals. (*Id.*).

Plaintiff has stated an Eighth Amendment claim against Nurse Simpson, Hundley, Streeter, and Yates for deliberate indifference to his serious medical needs, which impact his mobility, by confiscating his medically necessary mobility devices, a wheelchair and a cane.

Plaintiff's allegations, however, do not allow the plausible inference that Dr. Cole or Cunningham acted with deliberate indifference. Nothing in the Complaint establishes that Plaintiff's mobility devices were confiscated at the direction of Dr. Cole or Cunningham or with their knowledge or that they were aware he was missing meals and not being provided assistance while he awaited the issuance of his medical permit and wheelchair. Furthermore, responding to Plaintiff's wheelchair requests by issuing him a medical permit for a wheelchair does establish that Dr. Cole and Cunningham disregarded a serious risk to his health and acted with "total unconcern." *Stockton v. Milwaukee Cnty.,* 44 F.4 605, 615 (7th Cir. 2022). For these reasons, Count 5 is dismissed as to Dr. Cole and Cunningham.

## Count 6

Plaintiff asserts that Dr. Khan, Dr. Boose, Director Hughes, Warden Brown, Dr. Reister, and Wexford have not provided him with constitutionally adequate mental health care at

Lawrence.

Regardless of the exact details of Plaintiff's interactions with Dr. Kahn, his assertions that he has schizophrenia and that Dr. Khan has disregarded a serious risk to his health by failing to ensure that he receives food with the Geodon medication and/or by failing to prescribe an alternative treatment when Dr. Khan discovered that Plaintiff had stopped taking the medication because of it hurt Plaintiff's stomach are sufficient for Count 6 to proceed against Dr. Khan for deliberate indifference to Plaintiff's mental health needs.

Count 6 is dismissed, however, to the extent Plaintiff claims that Dr. Boose and Dr. Khan have violated his constitutional rights by refusing to place him in group therapy. (Doc. 1, p. 11, 12). Plaintiff asserts that when he was housed at Joliet Treatment Center in 2023, he received "inpatient level of care," which included group therapy sessions. Since his transfer from Joliet Treatment Center to Lawrence in September 2023 and upon his return to Lawrence in May 2025, he is receiving "outpatient level of care," and has not been referred to group therapy sessions. (Doc. 1, p.14). Plaintiff, however, is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). At this point, Plaintiff's assertion that he should be participating in group therapy is a mere disagreement with the doctor's treatment decisions concerning his mental health and does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir. 2003). Because failure to refer Plaintiff to group therapy is the only allegation against Dr. Boose, Count 6 is dismissed as to Dr. Boose in its entirety.

Count 6 is also dismissed as to the upper-level officials – Director Hughes, Warden Brown, and Dr. Reister, who is described as the mental health supervisor. Plaintiff's claims against these Defendants are sparse and conclusory. He states that they are liable for providing zero mental health care and for the deprivation of mental health needs. (Doc. 1, p. 11, 13). The facts do not

suggest personal involvement on the part of Hughes, Brown, or Reister in Plaintiff's mental health care, and Defendants cannot be found liable simply because they are "in charge" or in a supervisory position. (*See* Doc. 1, p. 14). The doctrine of respondeat superior does not apply to actions filed under Section 1983, and therefore, Defendants cannot be held liable solely for the errors of their subordinates. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). *See also Farmer v. Brennan,* 511 U.S. 825, 837 (1994) (deliberate indifference exists only if the defendant actually "knows of and disregards an excessive risk to inmate health or safety"). Accordingly, Count 6 is dismissed against Hughes, Brown, and Reister.

And finally, Count 6 is dismissed as to Wexford because Plaintiff does not assert that his constitutionally deficient mental health care was the result of a Wexford policy or custom. *See, e.g., Shields v. Ill. Dept. of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (stating that "[s]uch a private corporation cannot be held liable under [Section] 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself.").

**Count 7**

Plaintiff claims that the medical treatment that he had been receiving at Pontiac automatically ceased when he was transferred to Lawrence in violation of the settlement agreement reached in the class action lawsuit *Lippert*. (Doc. 1, p. 12). His mobility devices were confiscated, and his prescriptions and medical permits were canceled. Additionally, he was not scheduled to see Dr. Cole immediately in violation of IDOC protocol, he was forced to wait almost two weeks to receive a wheelchair, and he waited four days to receive his prescriptions. (*Id.* at p. 10, 12). Because of this lapse in care, Plaintiff suffered from several seizures and pain. (*Id.*).

Failing to adhere to a settlement agreement does not in and of itself create a cause of action under Section 1983. *See Eason v. Pritzker,* No. 20-cv-01157-SPM, 2020 WL 7027485, at *4 (S.D. Ill. Nov. 30, 2020). A settlement agreement is a contract, and this Court does not have the

jurisdiction to enforce its provisions. (*See Id.*). Although Defendants may not have implemented the provisions as agreed upon by the parties in *Lippert,* Plaintiff must still sufficiently plead facts that support an Eighth Amendment claim against each Defendant. Therefore, to the extent Plaintiff is attempting to hold Defendants liable simply for failing to comply with the *Lippert* settlement agreement, Count 7 is dismissed.

The only assertions that are attributed to specific Defendants regarding lapses in Plaintiff's care upon his initial arrival at Lawrence is the denial of his mobility devices and pain medication. (*See* Doc. 1, p. 10). Thus, the Court dismisses Count 7 to the extent Plaintiff is asserting a constitutional violation for the delay in receiving his other medications, and the denial of his shower permit when he was transferred to Lawrence, as he does associate this claim with a Defendant.

The Court has already addressed the denial of Plaintiff's mobility devices in Count 5, and so, Count 7 is dismissed as redundant to the extent Plaintiff is asserting that his constitutional rights were violated when his medical permit for use of a mobility device was not honored when he transferred to Lawrence.

As for the denial of pain medication, Plaintiff asserts that he submitted request slips asking for pain medication to Dr. Cole and HCUA Cunningham. Although he did not receive a written response to his requests, he resumed the Tramadol prescription within four days following his arrival. (Doc. 1, p. 10). These facts are not sufficient for the Court to infer that either Dr. Cole or Cunningham were involved in the delay Plaintiff experienced in receiving his pain medication or that they responded with deliberate indifference once they discovered a lapse in his care. Accordingly, Count 7 is dismissed to the extent Plaintiff is asserting that the delay in receiving pain medication violated the Eighth Amendment.

## Count 8

Under the ADA, "no qualified individual with a disability shall, because of that disability...be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The RA likewise prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. The analysis under the ADA and the RA is the same, except that the RA includes as an additional requirement, the receipt of federal funds, which all states accept for their prisons. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (citing 29 U.S.C. § 705(2)(B)). Discrimination under both statutes includes the failure to accommodate a disability. *Id.* at 672 (citation omitted).

Plaintiff claims that without his wheelchair or some kind of mobility device, he was unable to walk to the dining area and attend meals. (Doc. 1, p. 10). As a result, he did not eat "for days." (*Id.*). Access to meals is considered a "program or activity" within the meaning of the ADA/RA. *Jaros,* 684 f.3d at 672. The Court therefore finds that Plaintiff has adequately stated a claim for violations of the ADA and/or RA. The claim cannot proceed against an individual defendant, however, because individual employees of IDOC cannot be sued under the ADA and RA. *See* 42 U.S.C. § 12131(1)(b). *See also Jaros*, 684 F.3d at 670, n.2 (noting that individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). As such, IDOC Director Latoya Hughes will remain in the case in her official capacity only as the proper defendant for Plaintiff's ADA and/or RA claim.

### MOTION FOR RECONSIDERATION

Plaintiff has filed a Motion for Reconsideration asking the Court to reconsider the denial of his Motion for an Injunction, Temporary Restraining Order, and Change of Venue, in which he sought a change of venue and judge to adjudicate this case. (Doc. 10, 11, 12). Plaintiff argues that

the Court made an error of law in ruling on his Motion for Reconsideration due to a conflict of interest. (Doc. 12). He also disagrees with the Court's ruling that his request for injunctive relief against Director Hughes in his original Motion (Doc. 10) is distinct from his allegations against Hughes in the Complaint. And finally, Plaintiff contends that his requested injunctive relief, a transfer to another facility, is appropriate and will prevent further injury. The Motion for Reconsideration is **GRANTED in part** and **DENIED in part**.

Plaintiff is incorrect that it was error for the undersigned to rule on the Motion for an Injunction, Temporary Restraining Order, and Change of Venue. Section 144 requires that a "judge shall proceed no further" in presiding over a proceeding "whenever" the moving party files a "sufficient affidavit" that the presiding judge has personal bias or prejudice against a party. 28 U.S.C. §144; *Tezak v. U.S.,* 256 F. 3d 702, 716-17 (7th Cir. 2001). It is the presiding judge who decides whether the affidavit is legally sufficient. *See Berger v. U.S.,* 255 U.S. 22, 36 (1921) (district judge had a "lawful right to pass upon the sufficiency of the affidavit"); *U.S. v. Johnson,* 658 F. 2d 1176 (7th Cir. 1981) (finding the district judge properly denied the motion to recuse); *U.S. v. Balistrieri,* 779 F. 2d 1191, 1200 (7th Cir. 1985) (overruled on other grounds) (the judge is allowed to rule on the timeliness and sufficiency of the affidavit). Plaintiff did not provide an affidavit that was legally sufficient, and therefore, there was no requirement for the undersigned to refer the Motion to another judge and remove himself from the case. In the Motion, Plaintiff complained of prejudice based on alleged statements made by ADA Coordinators Clump and Cunningham that incorrectly informed Plaintiff that the undersigned directed for Plaintiff to be transferred to a new correctional facility. This case, No. 26-cv-00334-SPM, is the only open case Plaintiff currently has pending with the undersigned, and a review of the docket demonstrates that no such order was ever issued. Plaintiff did not show any kind of bias that is "personal" as is required. *U.S. v. Sykes,* 7 F. 3d 1331, 1339 (7th Cir. 1993). Thus, it was not in error for the

undersigned to rule on the request for reassignment of case. *See* FED. R. CIV. P. 54(b).

The Court will also not reconsider Plaintiff's request for a temporary restraining order (TRO). The Prison Litigation Reform Act requires that any grant of prospective relief, "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs" and cannot issue "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626. Federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode,* 423 U.S. 362, 379 (1976). In the Motion for an Injunction, Temporary Restraining Order, and Change of Venue, Plaintiff does not clearly specify the type of relief he seeks in order to restore his ADA status and wheelchair, which were revoked following his transfer to Menard Correctional Center (Menard). The only relief Plaintiff asks for is a change of judge and venue to protect his rights and health. (Doc. 10, p. 2). Not only has Plaintiff failed to establish a legal basis for assigning this case to another judge or a different venue, but this type of relief is not narrowly tailored to correct the alleged harm he is experiencing at Menard and not properly directed at Director Hughes. The Court did not commit error of fact or law in denying Plaintiff's request for a TRO, which would require the Court to issue an injunction before Defendants had a chance to respond to the Motion.

For the same reasons, the Court also did not err in denying the request for a preliminary injunction. However, in Plaintiff's Motion for Reconsideration he clarifies he seeks transfer to another facility (Doc. 12), and the Court finds it concerning that Plaintiff, who suffers from mobility issues and has been issued a wheelchair at previous facilities, has now been denied access to a wheelchair for allegedly non-medical reasons. Because the Court has liberally construed

Plaintiff's ADA/RA claim and allowed him to proceed with Count 8 against Director Hughes in her official capacity, **Director Hughes is directed to respond to the request for a preliminary injunction and the allegations in Doc. 10 and 12 within 14 days of service of the pleadings in this case, at which point the Court will determine the need for a hearing on the request for a preliminary injunction.** In response, Director Hughes shall provide information on Plaintiff's current medical diagnosis and care and his ADA status. Director Hughes shall support any factual assertions with relevant evidence, such as affidavits and/or medical records.

### MOTIONS FOR STATUS

To the extent Plaintiff seeks an update on the status of the case, his Motions for Status are **GRANTED** in light of this Order. (Doc. 6, 8, 13). Plaintiff's request for the Court to order the release of all property and legal documents is **DENIED**. (Doc. 8). To the extent Plaintiff is claiming that he is being denied access to his property and legal documents in violation of the First Amendment, such assertion is outside the scope of this lawsuit. A motion requesting emergency injunctive relief is not the appropriate avenue to add parties or claims. *See Bird v. Barr,* No. 19-cv-1581 (KBJ), 2020 WL 4219784, at *2 (D.C. Cir. July 23, 2020) (a court "only possesses the power to afford preliminary injunctive relief that is related to the claims at issue in the litigation").

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Hundley, Yates, and Streeter. **COUNT 2** will proceed against White. **COUNT 3** will proceed against Hundley, Yates, and Streeter. **COUNT 4** will proceed against White, Wilson, Hundley, and Reid. **COUNT 5** will proceed against Simpson, Hundley, Yates, and Streeter, and is **DISMISSED without prejudice** as to Cole and Cunningham. **COUNT 6** will proceed **in part** against Khan, and is **DISMISSED without prejudice** as to Boose, Hughes, Brown, Wexford, and Reister. **COUNT 7** is **DIMISSED without prejudice**. **COUNT 8**

Page 14 of 17

shall proceed against Hughes in her official capacity only. Because there are no surviving claims against Cole, Cunningham, Boose, Brown, Wexford, and Reister, the Clerk of Court is **DIRECTED** to terminate them as parties on the docket.

The Clerk of Court shall prepare for Hundley, Yates, Streeter, White, Wilson, Reid, Simpson, Khan, and Hughes (official capacity only) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Because this suit includes claims of physical injury and medical care, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2(b), Defendants should respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for

leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in the action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 24, 2026**

**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.